```
1              IN THE UNITED STATES DISTRICT COURT
2              FOR THE SOUTHERN DISTRICT OF TEXAS
3                       GALVESTON DIVISION
4  UNITED STATES OF AMERICA    §   CASE NO. 3:16-CR-00001-1
                               §   GALVESTON, TEXAS
5  VERSUS                      §   THURSDAY,
                               §   SEPTEMBER 29, 2016
6  BENJAMIN DOUGLAS GUIDRY     §   11:35 A.M. TO 11:58 A.M.
7
                            REARRAIGNMENT
8
          BEFORE THE HONORABLE GEORGE C. HANKS
9               UNITED STATES DISTRICT JUDGE
10
11     APPEARANCES:                      SEE NEXT PAGE
12     COURT RECORDER:                   CHRIS KRUS
```

20
                TRANSCRIPTION SERVICE BY:

21      JUDICIAL TRANSCRIBERS OF TEXAS, LLC
              935 ELDRIDGE ROAD, #144
22             SUGAR LAND, TEXAS 77478
        Tel: 281-277-5325 ▼ Fax: 281-277-0946
23          www.judicialtranscribers.com

24
   Proceedings recorded by electronic sound recording;
25     transcript produced by transcription service.

1              APPEARANCES:

2

3  FOR THE GOVERNMENT:           CHARLES ESCHER, ESQ.
                                 U.S. ATTORNEY'S OFFICE
4                                1000 LOUISIANA
                                 SUITE 2300
5                                HOUSTON, TEXAS  77002
                                 713-567-9716
6

7  FOR THE DEFENDANT:            SEAN BUCKLEY, ESQ.
                                 ATTORNEY AT LAW
8                                770 SOUTH POST OAK LANE
                                 SUITE 620
9                                HOUSTON, TEXAS  77056
                                 713-380-1220
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | GALVESTON, TEXAS; THURSDAY, SEPTEMBER 29, 2016; 11:35 A.M. |
| 2 | THE COURT: The next case on the Court's Docket is |
| 3 | Cause No. 3-16-CR-1, United States of America versus |
| 4 | Mr. Benjamin Douglas Guidry. |
| 5 | Can Counsel -- and Mr. Guidry, if you could |
| 6 | approach, sir? |
| 7 | And if everyone starting with the Government could |
| 8 | just introduce themselves to the Court and state the parties |
| 9 | they represent. |
| 10 | MR. ESCHER: Good morning, Your Honor. |
| 11 | Charles Escher for the United States. |
| 12 | THE COURT: Mr. Escher. |
| 13 | MR. BUCKLEY: Good morning, Your Honor. |
| 14 | Sean Buckley for Mr. Guidry. |
| 15 | THE COURT: Okay. Mr. Buckley. |
| 16 | DEFENDANT GUIDRY: Sean Douglas Guidry. |
| 17 | THE COURT: Good morning, Mr. Guidry. |
| 18 | DEFENDANT GUIDRY: Good morning. |
| 19 | THE COURT: We're here, sir, for purposes of the |
| 20 | Court receiving your plea of either guilty or not guilty the |
| 21 | charges that have been brought against you. Before I can |
| 22 | accept a guilty plea in this case, excuse me, sir, I need to |
| 23 | make sure that you understand what it is that you've been |
| 24 | charged with, the potential penalties that you face and all |
| 25 | the rights that you would be giving up once you plead |

1 guilty.

2 So what we're going to do this morning is, first,
3 I'm going to swear you in and I'm going to take testimony
4 from you under oath to make sure you understand the Plea
5 Agreement, make sure you understand the charges, understand
6 the penalties and then understand the facts that the
7 Government would prove if this case would go to trial. And
8 I'm going to ask you whether or not you agree to those facts
9 as true.

10 So the first thing we need to do is if you could
11 -- I know it's a little difficult to raise your hand and be
12 sworn.

13 (Defendant sworn.)

14 THE COURT: Okay. Mr. Guidry, I'm just going to
15 ask you a couple of questions.

16 Do you understand that you're now under oath and
17 if you answer any of my questions falsely, your answers may
18 be later used against you in another prosecution for perjury
19 or making a false statement?

20 DEFENDANT GUIDRY: Yes, Your Honor.

21 THE COURT: Okay. And can you please tell me your
22 full name?

23 DEFENDANT GUIDRY: Benjamin Douglas Guidry.

24 THE COURT: Okay, Mr. Guidry.

25 And where were you born, sir?

1    DEFENDANT GUIDRY:  Houston, Texas.
2    THE COURT:  Okay.  And how old are you?
3    DEFENDANT GUIDRY:  I'm 34.
4    THE COURT:  Okay.  And how far did you go in
5 school?
6    DEFENDANT GUIDRY:  I've got my bachelors degree.
7    THE COURT:  Okay.  And have you been recently
8 treated for any mental illness or addition to narcotic drugs
9 of any kind?
10    DEFENDANT GUIDRY:  Yes, sir.
11    THE COURT:  Okay.  Can you tell me about that
12 treatment?
13    DEFENDANT GUIDRY:  Yes, sir, I'm bipolar.  I've
14 got severe anxiety and severe depression.
15    THE COURT:  Okay.  Are you currently under
16 medication now?
17    DEFENDANT GUIDRY:  Yes, Your Honor.
18    THE COURT: Okay.  Do you feel that the medication
19 that you're on would prevent you from understanding these
20 proceedings and -- well, first of all, do you feel that the
21 medication that you're on would prevent you from
22 understanding these proceedings?
23    DEFENDANT GUIDRY:  No, no, Your Honor.
24    THE COURT:  Okay.  And do you feel that the
25 medication that you're on would any way affect your ability

to plead guilty in this case?

DEFENDANT GUIDRY: No, Your Honor.

THE COURT: Okay. Counsel, I'm sure you're familiar with your client's medical condition; are there -- do you have any reservations as to whether or not your client based on the medications he's taking, fully understands these proceedings and is able to enter a knowing plea?

MR. BUCKLEY: No, Your Honor, I have no concern at this time. I've had Mr. Guidry professionally tested and evaluated by a doctor/psychologist and he is competent and I'm satisfied in my own conversations that he understands the proceedings.

THE COURT: Okay. Mr. Guidry, have you received a copy of the Indictment or information in this case pending against you, that is, the written charges made against you and have you fully discussed those charges in the case in general with your Counsel in this case?

DEFENDANT GUIDRY: Yes, Your Honor.

THE COURT: Okay. I understand that there's a Plea Agreement in this case. I have reviewed the Plea Agreement. Now, I just need to ask you some questions about that Agreement.

Did you, Mr. Guidry, have an opportunity to read and discuss the Plea Agreement with your lawyer in this

1  case?
2  DEFENDANT GUIDRY: Yes, Your Honor.
3  THE COURT: Okay. And does the Plea Agreement
4  represent in its entirety any understandings that you have
5  with the Government?
6  DEFENDANT GUIDRY: Yes, Your Honor.
7  THE COURT: Okay. And do you understand the terms
8  of that Plea Agreement?
9  DEFENDANT GUIDRY: Yes, Your Honor.
10  THE COURT: Okay. Has anyone made any promise or
11  assurance that is not in the Plea Agreement to persuade you
12  to accept the terms of this Agreement?
13  DEFENDANT GUIDRY: No, Your Honor.
14  THE COURT: Okay. Has anyone threatened you in
15  any way to persuade you to accept this Agreement?
16  DEFENDANT GUIDRY: No, Your Honor.
17  THE COURT: Has anyone attempted in any way to
18  force you to plead guilty or otherwise threaten you to plead
19  guilty in this case?
20  DEFENDANT GUIDRY: No, Your Honor.
21  THE COURT: Has anyone made any promises or
22  assurances of any kind to get you to plead guilty other than
23  the promises and assurances that are contained in the Plea
24  Agreement?
25  DEFENDANT GUIDRY: No, Your Honor.

1 THE COURT: Okay. Are you pleading guilty in this
2 case of your own free will because you believe that you are
3 guilty?
4 DEFENDANT GUIDRY: Yes, Your Honor.
5 THE COURT: Do you understand that the events to
6 which you're pleading guilty is a felony offense, that if
7 your plea is accepted, you will be adjudged guilty of that
8 offense and that such adjudication may deprive you of
9 valuable civil rights such as the right to vote, the right
10 to hold public office, the right to serve in a jury, and the
11 right to possess any kind of firearm?
12 DEFENDANT GUIDRY: Yes, Your Honor.
13 THE COURT: Do you understand that a conviction to
14 this offense will likely result in substantial future
15 restrictions on where you may live or work and with whom you
16 may associate?
17 DEFENDANT GUIDRY: Yes, Your Honor.
18 THE COURT: Okay. At this time, Mr. Guidry, I'm
19 going to ask the Government to go through with you, not the
20 facts yet, but just go through with you the charges that
21 have been brought up against you in this case and the
22 elements that the Government would have to prove in order to
23 convict you of these charges in this case.
24 Counsel?
25 MR. ESCHER: The charges, Your Honor, or the first

two counts of the Superseding Informationcharged the Defendant with having minor victims engaging sexually explicit conduct for the purpose of taking visual depictions of that conduct and for the depiction either to be transmitted in -- through some facility of interstate or foreign commerce;

Or that the equipment used to produce the visual depictions were made or shipped or produced in interstate and foreign commerce.

The third count charges the Defendant with filing a false claim against the United States in the nature of a false income tax return, punishable under Section 287 of Title 18.

The first two counts which charge violations under Title 18, Section 2251(a) and (e), each carry a punishment range of 15 to 30 years of imprisonment;

A fine of $250,000;

And a term of supervised release of five years to life.

The third count, the false clam count, carries a maximum prison sentence of five years;

A fine of $250,000;

And a term of supervised release of up to three years. And, of course, there's always the $100 assessment for each count.

1      Is that sufficient, Your Honor?
2      THE COURT: Yes, Counsel.
3      So, Mr. Guidry, you now understand what it is that
4 you've been charged with as well as potential penalties
5 you're facing should you be adjudged guilty of the offenses
6 in the Superseding Information?
7      DEFENDANT GUIDRY: Yes, Your Honor.
8      THE COURT: Okay.
9      MR. ESCHER: Your Honor, did you want me to also
10 go over the elements or would -- is the Court going to do
11 that?
12     THE COURT: Oh, I actually was going to ask you
13 about the elements as well.
14     MR. ESCHER: Thank you.
15     THE COURT: Okay. But we'll get to that in just a
16 little bit. I guess every Judge does it a little bit
17 differently, sorry.
18     MR. ESCHER: That's okay. My apologies.
19     THE COURT: Now, I'm going to go over with you,
20 Mr. Guidry, the rights that you'd be giving up with respect
21 to the trial in this matter. And once I go through these
22 rights, I just need to make sure that you understand the
23 rights that you're giving up.
24     So do you understand that you would have the right
25 to plead not guilty? You have the right to plead not guilty

1 to any offense charged against you and persist in that plea
2 that you would then have the right to a trial by jury.  That
3 at trial, you would be presumed to be innocent and the
4 Government would have to prove your guilty beyond a
5 reasonable doubt, that you would then have -- that you would
6 have the right to assistance of Counsel for your defense
7 appointed by the Court, if necessary, at trial and at every
8 other stage of this proceeding, the right to see and hear
9 all witnesses and have them cross-examined in your defense,
10 the right on your own parts and decline to testify unless
11 you voluntarily elected to do so in your own defense and the
12 right to compel the attendance of witnesses to testify in
13 your defense.

14 Do you understand that if you did not plead guilty
15 you would have all these rights?

16 DEFENDANT GUIDRY:  Yes, Your Honor.

17 THE COURT:  Do you understand that you -- that
18 should you decide not to put on any evidence or testify that
19 these facts cannot be used against you?

20 DEFENDANT GUIDRY:  Yes, Your Honor.

21 THE COURT:  Okay.  Do you further understand that
22 by entering a plea of guilty, if that plea is accepted by
23 the Court, there will be no trial and you will have waived
24 or given up your right to a trial as well as those other
25 rights associated with the trial that I've just described to

1  you?

2  DEFENDANT GUIDRY: Yes, Your Honor.

3  THE COURT: At this time, I'm going to ask the
4  Government to set forth the elements of the offenses that
5  you've been charged with and the facts that the Government
6  would prove with respect to each of those elements in order
7  to secure a conviction in this case.

8  Counsel?

9  MR. ESCHER: Thank you, Your Honor. I'll start
10 with the elements for all three counts.

11 For Counts One and Two, the elements are:

12 That the Defendant did employ, use, persuade,
13 induce, entice or coerce a minor to engage in sexually
14 explicit conduct;

15 Second, that the Defendant did this for the
16 purpose of producing a visual depiction;

17 Third, at the time the victim was, in fact, a
18 minor;

19 And Fourth, the Defendant produced the visual
20 depiction using materials that had been mailed, shipped, or
21 transported or affecting interstate or foreign commerce by
22 any means including by computer or that the visual depiction
23 is actually transported using any means or facility of
24 interstate or foreign commerce in or affecting interstate or
25 -- in or affecting interstate or foreign commerce was -- or

mailed.

For Count Three, the elements are first: that the Defendant knowingly presented to an agency of the IRS, excuse me, of the United States, namely the IRS, a false, fictitious, or fraudulent claim against the United States;

Second, the Defendant knew at the time that the claim was false, fictitious, or fraudulent;

And, third, the false, fictitious, or fraudulent claim was material.

And the Court wants me to go into the facts now?

THE COURT: Yes. And the factual basis.

MR. ESCHER: Well, I'll start -- I'll do it in reverse starting with the Third Count.

The Defendant from approximately 2011 through approximately May of 2014, was in the business of preparing income tax returns in the City of Kemah, Texas, in a business known as "Rite Accounting Services, Inc." And from after that, May 14 -- excuse me, May 2014 through approximately December of 2015, the Defendant prepared income tax returns for clients in a business known as "Financial Precision Group" in League City, Texas.

In both of these businesses, the Defendant was operating a scheme to file false claims against the United States. The scheme started out in this way: the Defendant would prepare an income tax return for his client showing a

certain amount of tax owed or refund -- and or a refund, and then file with the IRS an entirely separate tax return showing a larger refund. When the Defendant directed the IRS to send a portion of that larger refund to the client and a portion to bank accounts that the Defendant had control of. And so the client didn't realize he was filing with the IRS an inflated tax refund claim.

Later in the scheme the Defendant changed to where he was having the IRS direct the entire refund to him and he was paying the client the portion that was on the return the client received. For the specific count in the Indictment, it involved a 2014 Return for a taxpayer named "EZ" filed in April of 2015. And it claimed the one -- the part of the Return that was actually filed with the IRS claimed a refund of $22,655 but the Return that Mr. Guidry gave his client showed a refund owing of only $9529. So when the IRS sent the entire refund to Mr. Guidry, he sent the client the $9529 and kept the amount of $13,126 for himself.

The Defendant agrees in this Plea Agreement that his relevant conduct on Count Three, the tax count, is somewhere between 250,000 and $550,000. And the Defendant has agreed to restitution in this case to pay to the IRS $158,454. And to pay also to the IRS an amount of $35,000, that is, to be specifically applied to employment tax liabilities for three years, 2013, 14, and 15 of an entity

known as "Pool Scrubbers, LLC" and Mr. Robert Matthew Clark. And in addition to that restitution to Mr. Clark for $8,000 for the expenses of resolving his employment tax liabilities with the IRS.

During the IRS investigation, the IRS executed a search warrant at the Defendant's second place of business, Financial Precision Group and seized some computers and boxes of documents. When the IRS was reviewing the computer, the IRS noticed an external hard drive, something that appeared to be child pornography and stopped. And the IRS also noticed on a cell phone many text messages to what appeared to be a minor female, a total of something like 2300 text messages. The IRS stopped its investigation and called in the FBI which sent a search warrant of Defendant's residence. And also a search warrant to review the computers that the IRS had seized but had stopped viewing.

At the Defendant's residence, the FBI discovered some materials in the house that were include in videos on the external hard drive and also some of the emails that were sent to Minor Victim Number One. And for purposes of this hearing, I wanted to point out Minor Victim Number One's date of birth was XXXXX XX, 1999.

THE COURT: Okay.

MR. ESCHER: The FBI also discovered that a second minor in my book, which we call Minor Victim Number Two was

1 videoed also at the residence.  Her date of birth is XXX XX,
2 1999.  There's a video on there that appears to show
3 penetration of Minor Victim Number One by an adult male with
4 some resistance being spoken by the Minor Victim Number One.
5 And there was evidence that the Minor Victim Number One
6 might have been drugged or extremely sleepy.  And the FBI
7 also uncovered pills that in the Defendant's automobile,
8 when he went to his automobile to get cigarettes.  And the
9 Minor Victim Number One's mother confirmed that the
10 Defendant at times would give Minor Victim Number One pills
11 for pain.
12 　　　　　The external hard drive had at least 164 images
13 and 20 videos of child pornography.  The Apple iPhone
14 contained at least three videos of child pornography.
15 The -- another external hard drive contained at least eight
16 videos of child pornography.  And the computer media
17 containing all the child pornography, images, and videos
18 were produced outside the State of Texas.
19 　　　　　The Defendant agrees for the purposes of the tax
20 count that his conduct involves sophisticated means and that
21 he was in the business of preparing income tax returns.
22 　　　　　And the Defendant also acknowledges in the Plea
23 Agreement that if convicted of these offenses, he must
24 register as a sex offender.  I think that covers the main
25 points, Your Honor.

1     THE COURT: Okay. Mr. Guidry, you've heard the
2  facts, the elements that the Government would be required to
3  prove to secure a conviction in this case. And you also
4  heard the facts that the Government plans to prove.
5     Do you agree it's true the facts that the
6  Government has just stated that it would prove if this case
7  went to trial?
8     DEFENDANT GUIDRY: Yes, Your Honor.
9     THE COURT: Now, with respect to the charges that
10 have been brought against you in the Superseding
11 Information, Mr. Guidry, how do you plead, guilty or not
12 guilty?
13    DEFENDANT GUIDRY: Guilty, Your Honor.
14    THE COURT: The Court accepts your plea and it is
15 the finding of the Court in the case of the United States of
16 American versus Mr. Benjamin Douglas Guidry, that the
17 Defendant is fully competent and capable of entering an
18 informed plea that Mr. Guidry is aware of the nature of the
19 charges and the consequences of that plea, and that the plea
20 of guilty is a knowing and voluntary plea supported by an
21 independent basis of fact containing each of the essential
22 elements of the offenses charged.
23    Mr. Guidry's plea is therefore accepted and
24 Mr. Guidry is now adjudged guilty of the offenses charged.
25    Now, what's going to happen next, sir -- has the

```
 1  Plea Agreement been executed yet?
 2          MR. BUCKLEY:  It will be executed in about two
 3  seconds.
 4          THE COURT:  Okay.
 5          MR. BUCKLEY:  The Agreement is executed, Your
 6  Honor.
 7          THE COURT:  Okay.
 8          MR. BUCKLEY:  Oh, I spoke too soon, Your Honor.
 9          THE COURT:  Not a problem.
10      (Pause in the proceedings/Court preparing document.)
11          THE COURT:  Okay.  The Record will reflect that
12  the Plea Agreement has been signed by the Government,
13  Mr. Guidry and his Counsel in this case.
14          So, Mr. Guidry, what's going to happen next is:
15  I'm going to sign an order which I have just signed
16  actually, setting for the schedule for a presentence
17  investigation report to be done.  Once that report is
18  completed, then I'll review that report and then the Marshal
19  Service will bring you back here on January 5th, 2017, at
20  11:00 o'clock a.m.  And that will be the date of your
21  sentencing.
22          So what I'm going to do is remand you back into
23  the custody of the Marshal Service.  I will input these
24  dates.  I think your Counsel already has a copy --
25          MR. BUCKLEY:  I do, Your Honor.
```

1       THE COURT: -- of the Order setting forth the
2 dates to get the presentence report prepared by. Once
3 that's done and you've made any objections or comments that
4 you wish to make with respect to that report, we will set a
5 sentencing for January 5th, 2017 at 11:00 o'clock. Okay.
6       Is there any questions or anything further from
7 the Government or Mr. Buckley on behalf of Mr. Guidry?
8       MR. BUCKLEY: No, Your Honor.
9       MR. ESCHER: No, Your Honor. Well, do we need to
10 add that he will stay detained until sentencing?
11       THE COURT: Yes, sir. I'm remanding you back into
12 the custody, sir, of the Marshal Service and you will remain
13 in custody until such time as the Court sentences you which
14 will be January 5th, 2017. Okay.
15       DEFENDANT GUIDRY: Thank you, Your Honor.
16       THE COURT: Good luck to you, Mr. Guidry.
17       DEFENDANT GUIDRY: Thank you.
18       THE COURT: Okay. And, Counsel, you may be
19 excused. Thank you.
20       MR. BUCKLEY: Thank you, Your Honor.
21   (Proceedings adjourned at 11:57 a.m.)
22       *****
23   *I certify that the foregoing is a correct*
24 *transcript to the best of my ability produced from the*
25 *electronic sound recording of the proceedings in the above-*

1  *entitled matter.*
2  */S/ MARY D. HENRY*
3  *CERTIFIED BY THE AMERICAN ASSOCIATION OF*
4  *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET\*\*D-337*
5  *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*
6  *JTT TRANSCRIPT #57120*
7  *DATE:  AUGUST 13, 2017*