1               IN THE UNITED STATES DISTRICT COURT

2             FOR THE SOUTHERN DISTRICT OF TEXAS

3                  GALVESTON DIVISION

4  UNITED STATES OF AMERICA     §    CASE NO. 3:16-CR-00001-1
                        §    GALVESTON, TEXAS
5  VERSUS                    §    WEDNESDAY,
                        §    JUNE 14, 2017
6  BENJAMIN DOUGLAS GUIDRY     §    11:27 A.M. TO 12:40 P.M.

7

8                        SENTENCING

9        BEFORE THE HONORABLE GEORGE C. HANKS
              UNITED STATES DISTRICT JUDGE

10

11     APPEARANCES:                  SEE NEXT PAGE

12     COURT RECORDER:           ANDY GOULD

13

14

15

16

17

18

19

20              TRANSCRIPTION SERVICE BY:

21         JUDICIAL TRANSCRIBERS OF TEXAS, LLC
             935 ELDRIDGE ROAD, #144
22            SUGAR LAND, TEXAS 77478
       Tel: 281-277-5325 ▼ Fax: 281-277-0946
23          www.judicialtranscribers.com

24

25   Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.

1                    <u>APPEARANCES:</u>

2

3   FOR THE GOVERNMENT:              SHERRI ZACK, ESQ.
                                    CHARLES ESCHER, ESQ.
4                                   U.S. ATTORNEY'S OFFICE
                                    1000 LOUISIANA
5                                   SUITE 2300
                                    HOUSTON, TEXAS  77002
6                                   713-567-9716

7
    FOR DEFENDANT GUIDRY:           SEAN BUCKLEY, ESQ.
8                                   ATTORNEY AT LAW
                                    770 SOUTH POST OAK LANE
9                                   SUITE 620
                                    HOUSTON, TEXAS  77056
10                                  713-380-1220

11
    ALSO APPEARING:
12
                                    KIMBERLY JONES
13                                  U.S. PROBATION OFFICER

14

15

16

17

18

19

20

21

22

23

24

25

1      GALVESTON, TEXAS; WEDNESDAY, JUNE 14, 2017; 11:27 A.M.

2             THE COURT:  The next case on the Court's Docket is

3    Cause No. 3-16-CR-1, the United States of America versus

4    Mr. Benjamin Douglas Guidry.

5             And, Counsel, please approach.

6             MS. ZACK:  Sherri Zack and Charlie Escher, on

7    behalf of the United States, Your Honor.

8             THE COURT:  Okay.

9             MR. BUCKLEY:  Good morning, Your Honor.

10   Sean Buckley for Mr. Guidry.

11            THE COURT:  Welcome, everyone.

12            Mr. Guidry, can you please approach, sir?

13            We also have present the Probation Officer.

14            Can you just introduce yourself for the Record,

15   ma'am?

16            PROBATION OFFICER JONES:  Yes.  Kimberly Jones for

17   U.S. Probation, Your Honor.

18            THE COURT:  Okay.  Thanks, Ms. Jones.

19            Mr. Guidry, we're here this morning, sir, for

20   purposes of your sentencing with respect to the charges that

21   were brought against you and that you pled guilty to.  In

22   preparation for the sentencing, I have reviewed both the

23   Amended Sentencing Memorandum and the attachments, the

24   Sentencing Memorandum.

25            I've also reviewed the PSI that was prepared, your

1  counsel's objections to the PSI, the Government's statement

2  of no objections to the PSI as well as the pleadings in this

3  case and the information submitted to me by the Probation

4  Office.

5          Is there any other documents or letters other than

6  what's already been filed that you wish the Court to

7  consider in this matter?

8          DEFENDANT GUIDRY:  My lawyer filed the letters

9  along with the Sentencing Memorandum.

10         THE COURT:  Yes, I --

11     (Counsel confers with Defendant.)

12         THE COURT:  I'm sorry.

13         MR. BUCKLEY:  Pardon me, Your Honor.  I was just

14  informing Mr. Guidry that that was included within the

15  attachments so he would not feel --

16         DEFENDANT GUIDRY:  Oh, I'm sorry.

17         THE COURT:  I'm sorry.  Yes, that's true.  I did

18  read all the letters that were attached to the Sentencing

19  Memorandum and your attorney also filed an Amended

20  Sentencing Memorandum with additional information and I've

21  reviewed all of that as well.

22         DEFENDANT GUIDRY:  Yes, sir.  I'm sorry.

23         THE COURT:  Is there anything other than that that

24  the Court -- anything in addition to what you filed already

25  that you wish the Court to consider?

1          MR. BUCKLEY:  No, Your Honor.

2          THE COURT:  Okay.

3          MR. BUCKLEY:  Thank you.

4          THE COURT:  Ms. Zack, do you have any witnesses or

5   victims present in the courtroom?

6          MS. ZACK:  No, Your Honor.

7          THE COURT:  Okay.  And are you expecting an

8   evidentiary hearing?

9          MS. ZACK:  No, Your Honor.

10          THE COURT:  Okay.  Mr. Buckley, have you and your

11   client read and discussed the Presentence Report in this

12   case?

13          MR. BUCKLEY:  We have, Your Honor.

14          THE COURT:  Okay.  And have you discussed the

15   objections with him that you made to the PSR?

16          MR. BUCKLEY:  Yes, Your Honor.

17          THE COURT:  And are you expecting an evidentiary

18   hearing?

19          MR. BUCKLEY:  I am not, Your Honor.

20          THE COURT:  Okay.  And do you have any witnesses

21   present in the courtroom?

22          MR. BUCKLEY:  No, Your Honor.  And as far as

23   witness testimony is concerned, we would defer to the

24   letters that have been submitted through the Sentencing

25   Memorandum.

1          THE COURT:  Okay.

2      (Pause in the proceedings.)

3          THE COURT:  I have read the objections to the

4  Presentence Report and I've read the Government's position

5  on those objections as well.

6          Counsel, do you wish to make any argument beyond

7  what is already contained in your objections?

8          MR. BUCKLEY:  No argument beyond that.  Well, the

9  only argument I would supplement, Your Honor, has to do with

10 the objection to -- and pardon me while I reference the

11 objection please.

12         THE COURT:  Oh, sure.

13         MR. BUCKLEY:  There is a -- Paragraph 56,

14 Your Honor, applies a four-level enhancement for material

15 that portrays sadistic or masochistic conduct or other

16 depictions of violence, pursuant to 2G2.1(b)(4)(A) and an

17 objection to that has been filed and articulated.  The

18 response from Probation was that the nature of the offense

19 conduct itself could be seen to incorporate a violent or

20 sadistic either results or aim and a case was cited, which

21 is *United States versus Lyckman*.  I have reviewed the case.

22         And I would also draw the Court's attention to the

23 enhancement -- the previous enhancement, which was made for

24 -- it was a four-point enhancement because the conduct fell

25 under 18, U.S.C., 2241(a), and 2241(a) includes forcible

sexual assault.  And so my view and the basis for the

initial written objection is that to apply the additional

four points for sadism and masochism or   violence is

duplicitous and essentially double-counts, but also that in

this particular case and taking into account the rationale

expressed by the Fifth Circuit in  *U.S. versus Lyckman*, it

does not fall within the purview of that additional four-

point enhancement.

        And the Court in *Lyckman* was confronted with a set

of facts where the Defendant had -- in the course of

producing the pornography, had sexually assaulted by

penetrating a 12-year-old old and the Court specifically

associated the sadism or violent elements of that

enhancement with the fact that this girl was so young.  And

other cases that the Fifth Circuit has evaluated seem to

also flow from the thread articulated in *Lyckman* that the

young age of the victim in that case would have necessarily

caused the circumstance by that type of abuse that could be

or would reasonably be foreseen to be sadistic.

        In this case -- and again, not in any way to

minimize the -- what was done, but the Minor Victim Number 1

in this case was a 15-year-old girl.  And I don't believe

that there's any evidence in the Record that squarely puts

Mr. Guidry's actions with respect to that victim squarely

within this particular enhancement.

1          THE COURT:  Okay.  That's a good question.

2          Isn't, with respect to that victim, the video show

3   evidence that she would -- I mean, at least what -- reading

4   the file, that she kept saying, "No, don't do this, stop,"

5   and then Mr. Guidry continued to assault her?

6          MR. BUCKLEY:  Yes, Your Honor.

7          THE COURT:  I mean, why wouldn't that be sadistic

8   and -- in addition to her age, that information, if true,

9   which is stated in the PSR, qualify for the four-level

10  enhancement?

11         MR. BUCKLEY:  My view, Your Honor, my response

12  would be respectfully that anytime you have a forcible

13  sexual assault under 18, U.S.C., 2241 that that type of

14  scenario would seem to encompass universally a situation

15  where the victim was not consenting and may have protested.

16         THE COURT:  But wasn't she also drugged at the

17  time?

18         MR. BUCKLEY:  There is evidence of that,

19  Your Honor, and we don't dispute that.

20         THE COURT:  So she's 15 years' old, she's drugged

21  and she's saying, "No, stop it, don't do this."

22         MR. BUCKLEY:  Yes, Your Honor.

23         THE COURT:  Okay.

24         MR. BUCKLEY:  In no way -- for clarity, in no way

25  am I condoning or minimizing the severity of this.  I am

1  only as a technical or advocate attempting to distinguish

2  what I believe the Sentencing Commission intended this to be

3  used for and what I think the factual basis is without in

4  any way suggesting that this is not a serious and disturbing

5  act.

6          THE COURT:  Yeah.  Ms. Zack?

7          MS. ZACK:  Your Honor, as you can tell from the

8  Response submitted by the United States that we do believe

9  this was an act of violence and that the behavior was

10 abhorrent between the drugging her and the sexual assault.

11         THE COURT:  Okay.

12         MS. ZACK:  I agree with Mr. Buckley though that

13 there is not a case on point that supports that finding for

14 a child as old as the victim in this case.  He does get the

15 enhancement for the 2241.  And he is also then further

16 enhanced for the -- where is it?  The -- continuing the

17 pattern of sexual assault and the repeat and dangerous sex

18 offender under 4B1.5.

19         THE COURT:  Okay.

20         MS. ZACK:  So even if the Court decided that the

21 sadomasochistic doesn't apply, just for your own

22 edification, where we would be would be -- and I've reviewed

23 this with Probation -- instead of being a Level 43-II, which

24 is life, he would be a level 42-II, which is 360 to life.

25 So Your Honor still has the same ability to sentence up to

life, if Your Honor chooses to, but there is then a bottom

where there was no bottom in he is a 43.

THE COURT: Okay.

MS. ZACK: The bottom is life. So I don't know if
it would constitute double-counting, but he is certainly
being held accountable for behaviors that someone who got
the sadomasochistic enhancement isn't always held
accountable for. So in a nonproduction setting, you might
not have repeat and dangerous sex offender, but you would
have sadomasochistic. And that typically applies to very
tender age victims, toddlers, very young children, the
12-year-old, in the case that Mr. Buckley cited, being
penetrated, things like that.

So there is no precedent to support it applying to
the victim in this case, but there's also no precedent
saying it doesn't apply.

THE COURT: Okay.

MS. ZACK: However, I think there might be a valid
double-counting argument with the 2241 as well as the repeat
and dangerous sex offender, which those together are not
considered double-counting. So for what it's worth, if this
one enhancement did not apply and it's really the only one
that there's any valid argument to that could go either way,
he would be at a 42 with 360 to life because there's no
arguing that it's not a 2241 because it is. They've

admitted that, they didn't argue against that. It was a

drug-facilitated rape. And then he is a repeat and

dangerous sex offender under 4B whatever that one is

specifically. So all of those certainly squarely apply.

This is the only one I think that could go either way.

THE COURT: Okay.

MS. ZACK: Other than that, I have no other issue

with the Guidelines as presented.

THE COURT: Okay.

MR. BUCKLEY: And if I may, Your Honor?

THE COURT: Yes, Mr. Buckley?

MR. BUCKLEY: In addition to the particular

objection that I've articulated and Ms. Zack has added to,

we maintain the objections that were presented in the

written Objections, but I do not have any further argument

beyond what has been presented.

THE COURT: Okay. One second, Counsel.

MR. BUCKLEY: Yes, sir.

THE COURT: So that's the objection to

Paragraph 56? Okay.

MR. BUCKLEY: Yes, Your Honor.

(Pause in the proceedings.)

THE COURT: And, Ms. Zack, with respect to -- I'm

just going to go through these -- the objections at

Paragraph 38, the factual reference --

1        MS. ZACK:  Yes, Your Honor.

2        THE COURT:  -- do you have any position on that?

3        MS. ZACK:  That is -- okay.  Paragraph 38.  We

4 responded to that that we believe that those -- all the

5 reports made to law enforcement were credible and that this

6 is what law enforcement put in their Reports.  Other than

7 Mr. Guidry saying, "No, that didn't happen," there's nothing

8 to refute that.  And both of the individuals that were

9 victimized in the child pornography setting we have not

10 found any reason to find them not credible.

11        THE COURT:  Okay.

12        MS. ZACK:  I mean, they've been credible.  Their

13 reports have been consistent.  In fact -- and I will point

14 out to the Court that there was an objection to one of the

15 earlier paragraphs, Paragraph 33 and --

16        THE COURT:  Yeah.

17        MS. ZACK:  Was it 32?

18        THE COURT:  I have 32.

19        MS. ZACK:  Yeah, I'm sorry, 32 where Probation

20 mistakenly thought that that fourth video was Minor

21 Victim 1.  Minor Victim 1 came in and we went over this with

22 her and her mother.  That was not her.  And so she certainly

23 had an opportunity, you know, to demonstrate her credibility

24 and we never found any reason to mistrust any of the others.

25 And law enforcement certainly doesn't have any reason to

1  make these details up.  This is what they reported.  It's

2  for the Court to determine whether you believe it's

3  credible.  But regardless of that, Your Honor, it has no

4  bearing on the calculations.

5       THE COURT:  All right.  Okay.  So after hearing

6  argument of parties, with respect to the objections that are

7  filed by the Defendant, the Court rules as follows:

8       With respect to Defendant's objection to Paragraph

9  32, the objection is sustained;

10       With respect to the objections to Paragraph 38,

11  the two objections to Paragraph 38, those are overruled;

12       The objection to Paragraph 40 is overruled;

13       The objection to Paragraph 42 is overruled;

14       The objection to Paragraph 56 with regards to the

15  four-level enhancement for material that portrays sadistic

16  or masochistic conduct or the depiction of violence, that

17  objection is sustained;

18       The objection to Paragraph 61 is overruled;

19       The objection to Paragraph 83 is overruled;

20       The objection to Paragraph 84 is overruled;

21       The objection to Paragraph 85 is overruled;

22       And the objection to Paragraph 121 is overruled.

23       Counsel, does that take care of all the objections

24  that are made?

25       MR. BUCKLEY:  Yes, Your Honor.

1          THE COURT:  Okay.  So subject to the Court's

2   rulings on the specific objections stated on the Record, the

3   PSR is adopted by the Court and will be used for purposes of

4   the Sentencing Hearing.

5        (Pause in the proceedings.)

6          THE COURT:  So based on my ruling with respect to

7   sustaining the objection on the sadistic and masochistic

8   conduct, the total offense level I think with be 42.2 and --

9   42, I'm sorry, and the criminal history category remain

10  as II; is that correct?

11          MS. ZACK:  Yes, Your Honor.

12          THE COURT:  Okay.

13          MS. ZACK:  Unless probation calculated it

14  otherwise.

15          PROBATION OFFICER JONES:  I did, Your Honor.  I

16  calculated it to be 43-II.

17          THE COURT:  Okay.

18          PROBATION OFFICER JONES:  And I can say on the

19  Record how it changes because when you use the units, it

20  changes a lot.

21          THE COURT:  Okay.  Can you explain?

22          PROBATION OFFICER JONES:  Yes, Your Honor.

23  Paragraph 56 we would disregard it.  That would be a zero.

24          Paragraph 61 will become a 40.

25          Paragraph 75 will become 40.

1          Paragraph 76 it remains a 34, but instead of zero
2    units, it would become half unit.

3          Paragraph 78, total number of units would be
4    1-1/2 units.

5          Paragraph 79 would be a 40.

6          Paragraph 80 would be one plus one.

7          Paragraph 81 would become a 41.

8          Paragraph 83 would become a 38.

9          And Paragraph 85 would remain a 43.

10         THE COURT:  Okay.

11         MS. ZACK:  So my math is wrong, Your Honor,
12   because I did not take into account the shift in units
13   that -- that recalculation so he still is then life at
14   43-II.

15         THE COURT:  Okay.

16      (Pause in the proceedings.)

17         THE COURT:  So after resolving the objections, I
18   calculate the advisory guideline range as follows:

19         The Defendant's offense level is 43 and the
20   criminal history category is II;

21         This produces -- and please correct me if I'm
22   wrong, Counsel, either side -- with calculation of the
23   guideline provision of 780 months pursuant to USSG Section
24   5G1.2(b);

25         Probation, no eligible;

1      Supervised release, at least five years and up to
2  life;

3            And a fine of 50,000 to $450,000.

4            Is that correct based on the calculations with
5  respect to my sustaining the objection?

6            MS. ZACK:  That's my understanding, Your Honor.

7            THE COURT:  And Probation?

8            PROBATION OFFICER JONES:  Yes, Your Honor, that's
9  correct.

10            THE COURT:  Mr. Buckley?

11            MR. BUCKLEY:  That is a correct calculation based
12  on the rulings, Your Honor.

13            THE COURT:  Okay.

14       (Pause in the proceedings.)

15            THE COURT:  The Court will now consider whether or
16  not to grant departures from the guideline range.  I
17  understand that the Defendant does wish a departure and/or a
18  downward variance as authorized in USSG 5K2.13, which is
19  diminished capacity, and 18, U.S.C., Section 3553(a) and
20  (d)(2)(A)(ii).

21            Is that correct?

22            MR. BUCKLEY:  Well, pardon me, Your Honor.  In the
23  Amended Sentencing Memorandum, as a matter of the technical
24  aspects of a departure and variances, we withdrew the
25  request for the departure under the diminished capacity

1  provision, but I do continue to assert and I'd like to argue

2  the request for a downward variance when the Court is ready.

3        THE COURT:  Okay.  That will be fine.  I forgot, I

4  apologize.  In your Amended Memorandum, you did withdraw

5  that request.

6        I'd like to hear your argument with regards to a

7  downward departure and/or a variance in this matter.

8        MR. BUCKLEY:  Thank you, Your Honor.  This case is

9  a tragic paradox in many ways.  Mr. Guidry, from his

10  childhood into his adulthood as referenced in the Sentencing

11  Record and in the materials, the support letters provided by

12  his mother particularly giving some insight into his long-

13  standing desire and need to be accepted and well-liked and

14  to get approval and admiration from the people that are

15  around him and particularly with the person who he

16  considered his best friend in the world growing up and into

17  adulthood, his father.  And the tragic paradox coming out of

18  that was that now he has alienated and disappointed and let

19  down and, in some cases, abused the people that he sought

20  this admiration from and has gone from someone who is worthy

21  of their admiration to someone who many people see as a

22  pariah for the acts that he's committed.

23        And perhaps most tragically as to his relationship

24  with his best friend, his father, his father has cut off

25  communication with him.  His father no longer speaks to

1  Ben Guidry as a result of his anger over Mr. Guidry's

2  offense conduct.  That is a -- perhaps the -- other than the

3  confinement, the most severe punishment that could be levied

4  upon Mr. Guidry for the acts that he's committed.

5          Mr. Guidry secondly has clearly and unequivocally

6  accepted responsibility for his conduct.  In his statement

7  to the Court, which is reflected in the PSI, he has stated

8  that notwithstanding his struggles with mental illness and

9  the difficulties as they've arisen in his life that he does

10 not blame any of his conduct, any of his offense conduct on

11 those mental health issues.  He notes that in the past, he

12 readily did so but that at this time, he clearly and without

13 question accepts responsibility before this Court.  I don't

14 disagree with Mr. Guidry, I think that he needed to accept

15 responsibility to this Court and to the victims.

16          I do however think that my job as an advocate

17 calls upon me to argue to the Court when I think that there

18 is an aspect of the case that is severely mitigating even

19 though Mr. Guidry himself may not adopt it as he presents

20 himself to Your Honor.  It appears clear to me from the

21 Sentencing Record and particularly the medical information

22 we have from both the FDC in Houston, the Galveston County

23 Jail, from the medical records that were submitted as a

24 supplement to this Sentencing Memorandum and as the -- to

25 the information provided by Mr. Guidry's mother in her

1  letter, that Mr. Guidry has, since the time of his

2  childhood, suffered from bona fide mental health problems.

3  And later in life those have manifested themselves in lack

4  of impulse control, problems with empathy, problems with

5  judgment and various other things.  I suspect that if over

6  time the layers of the onion were peeled back, that there

7  would be a complex set of issues under there that we may not

8  even know or fully understand at this time.

9         But he has admittedly when force to do so and

10  confronted with some of these realities from what he has

11  caused, he has sought out a heightened level of treatment

12  for these problems that he should have sought out a long

13  time ago.  There's no doubt about that.  He should have

14  sought this out as soon as these conditions and symptoms

15  manifested.

16         I think though that there is little doubt and

17  certainly I don't believe that there's evidence in his

18  history or in the Sentencing Record that he was committing

19  this type of offense conduct while he was treated and

20  properly medicated.  Again, that is not in any way an excuse

21  for the conduct itself, but it does I think shed light into

22  the connection of conduct to someone's true essence and

23  their true being.

24         And would he have committed this conduct had he

25  been medicated?  I don't believe so.  Of course I don't

1  know.  I'm not a psychiatric professional, but I base that

2  on several factors.  I think that there is a distinct and

3  noticeable paradox between the Ben Guidry that his parents,

4  his family and his supporters, some of whom are here today,

5  have seen and who continue to embrace and care about and the

6  Ben Guidry who committed the offense conduct that is before

7  the Court, which cannot be sugarcoated in any sense.  It's

8  disturbing.

9          There is also -- quite frankly, the qualities of

10  the conduct itself are bizarre.  The tax case, for example.

11  No one in their right mind could think that this is a

12  rationale scheme that would avoid detection.  It is

13  something that was destined to fail from the get-go and it

14  just is one example of how this was someone who was not in

15  control of his decision-making, not in control of his

16  reflection at the time.

17          And finally, with regard to Mr. Guidry's true

18  essence and the feelings that he has while he is medicated

19  and while he is able to reflect, I have had the interaction

20  with Mr. Guidry since 2015 in this case, fairly regular

21  interaction, and I've seen -- I realize I'm not testifying,

22  but I may as I hope the Court will accept my proffer of my

23  reflection.  I have seen distinct changes in Mr. Guidry's

24  ability to reflect and the other qualities that would be

25  relevant to his offense conduct and to his character during

1   the times that he's been successfully medicated versus the

2   times that he has not been.  And so I do see that there is a

3   remarkable difference in who he is when he is properly

4   medicated and that is another paradox or tragedy present in

5   this case.

6           I would also, without belaboring that any further,

7   draw the Court's attention again -- and I think the Court is

8   aware -- just the distinction between the acts relating to

9   Minor Victim 1 and the acts relating to Minor Victim 2.  And

10   Minor Victim 1, as the Court knows, was a completed act of

11   sexual assault and production of child pornography.  As to

12   Minor Victim 1, there was no physical abuse other than

13   the -- it is abuse -- the abuse of surreptitiously

14   videotaping her in a bathroom setting for voyeuristic

15   purposes, which I think was an attempted production, and

16   that's the way that we've accepted responsibility with

17   regard to that again not to minimize the impact of that

18   conduct, but simply to draw the distinction for the Court.

19           Naturally, Your Honor's concern and your

20   sentencing is to weigh the factors of 3553(a) particularly

21   your need to protect the community against future

22   dangerousness of any defendant and in this case particularly

23   Mr. Guidry.

24           I would respectfully argue to the Court that a

25   life term of supervised release following the term of

1  Mr. Guidry's incarceration can accomplish the goals of
2  ensuring that Mr. Guidry is compliant with his medication
3  and including instrumentality such as electronic GPS
4  monitoring and other things that would be within the purview
5  of the Probation Department to assess that could adequately
6  protect the community while also taking into account the
7  mitigating reality that this is someone who has a bona fide
8  mental illness.

9        And as unpleasant as the conduct was, there does
10 seem to be an argument and a basis for believing that he
11 would not have committed this conduct had he been in his
12 right mind.

13       And with that framework, Your Honor, we do request
14 that the Court, in Your Honor's discretion, issue a downward
15 variance and/or a sentencing at the low end.

16       THE COURT:  Okay.  Counsel?

17       MS. ZACK:  With all due respect to Mr. Buckley and
18 to individuals who mental illness, I don't think his mental
19 illness had anything to do with this.  I think that there
20 are two types of people, good people and bad people.  And
21 there are plenty of good people with mental illness that do
22 not commit tax fraud, that do not drug and rape minors for
23 their own sexual satisfaction, that don't set up
24 serendipitous bathroom cameras to capture the other victim's
25 best friend going to the bathroom or disrobing to shower.

1        He has daddy issues so we should cut him a break.

2   You know what?  A lot of people have a lot of problems with

3   their family and a lot of people deal with those problems

4   every day without becoming a train wreck that society now

5   has to deal with.  And he -- I believe it is very telling

6   that he didn't seek any help until the IRS came knocking on

7   his door to look at his records.

8        And I don't think his mental illness caused him to

9   commit an unsophisticated tax crime.  There are plenty of

10  people that aren't mentally ill that rob banks, really

11  poorly they rob banks in very unsophisticated ways so the

12  fact that he wasn't smart enough to come up with a better

13  scam and that the IRS caught him has nothing to do with

14  mental illness.  It has to do with the fact that he's a liar

15  and a thief and he would do anything he could to make money

16  in an illegitimate way because he is not a good person.

17       He was -- we know he was cheating on his wife and

18  these are not -- that's not mental illness.  He took a woman

19  that he was not married to into his bedroom, his master

20  bedroom, had sex with her and recorded it.  That's not

21  mental illness.  That's machismo.  That's "I am the man.  I

22  am powerful.  I will do whatever I want."  Rape is a crime

23  of violence.

24       What he did to this child was horrific.  He has

25  altered her life irrevocably.  There is -- she can never

1  erase what he did to her.  She will have trust issues, she

2  will have all sorts of issues because decided that he could

3  give her some drugs and sexually take advantage of her and

4  then film like that the -- adding insult to injury.

5          The actions that he took were not because he is

6  mentally ill and maybe that made it easier for him.  Maybe

7  he does have some impulse control, but he had plenty of

8  opportunities not to do this.  He had the ability to earn a

9  living.  Everybody has the ability to not have sex with

10  children, but he didn't do that.  He chose to do whatever he

11  could, whenever he wanted.  Why?  Because he wanted to.

12          And I feel bad for his family because as a parent,

13  I know you love unconditionally and you don't get to pick

14  the personality of your child.  You are who you are, good,

15  bad, whatever it may be.  And unfortunately in this case,

16  he's bad.  And the only way to protect society is to make

17  sure that he is not part of society and all -- I mean, there

18  isn't an enhancement that didn't apply to him.

19          Each decision he made he absolutely knew it was

20  wrong.  There's no way not to know it's wrong.  And whether

21  you're mentally ill or not, you know you're not supposed to

22  drug a 15-year-old and have sex with her.  And it wasn't one

23  time.  This went from when she was 14 through to when she

24  was 16.  It was a pattern.

25          At some point, did he have an epiphany while this

1  was going on that, "Hey, maybe I shouldn't be doing this"?

2  No.  That epiphany didn't show up until he decided he needed

3  treatment when the IRS came knocking on his door and maybe

4  he figured out, "Oh, God!  They took my computers and I know

5  what's on those computers and I know what's on my phone and

6  it's really bad so I better get some help now so it looks

7  better when I show up at sentencing."

8           And that's not to diminish the fact that he does

9  have a legitimate mental illness, but it's no different than

10 any other illness.  Whether you choose to seek treatment for

11 cancer or not is your choice.  He chose not to until he

12 needed to.  You know, people refuse treatment all the time

13 for things other than mental illness.  You have non-

14 compliant diabetes.

15          If they go and rob a bank, are they going to say,

16 "It was because I didn't take my insulin"?  That's their

17 choice.  He had freewill and he had free choice and he used

18 his freewill to violate everybody's trust not only in his

19 business dealings, in his personal dealings in every way,

20 shape and form imaginable.

21          And what we're asking you to do, Your Honor, is to

22 make him take responsibility for what he did, to sentence

23 him pursuant to way the Guidelines are calculated and to

24 prevent him from having the ability to ever interact with

25 society again and spare society the danger of his being a

1  part of it.

2          THE COURT:  Thank you, Ms. Zack.

3          We talked about both the downward departure and

4  variance at the same time so let me just -- before I make a

5  ruling on the request for variance, let me state that after

6  calculating the Guidelines and departures and hearing

7  argument, I must now consider the relevant factors set out

8  by Congress at 18, U.S.C., Section 3553(a) and ensure that I

9  impose a sentence that is "sufficient but not greater than

10 necessary to comply with the purposes of the sentencing."

11         The purposes include the need for the sentence to

12 reflect the seriousness of the crime, to promote respect for

13 the law and to provide just punishment for the offense.

14 This sentence should also deter criminal conduct, protect

15 the public from future crime by the Defendant and promote

16 rehabilitation.

17         In addition to the Guidelines and Policy

18 Statements, I must consider the nature and circumstances of

19 the offense, the history and characteristics of the

20 Defendant, the need to avoid unwarranted sentencing

21 disparities among similarly-situated defendants and the

22 types of sentences available.

23         In light of the arguments that were just presented

24 to me with respect to sentencing, I will consider those

25 arguments and incorporate my thoughts to those arguments in

1  the sentencing in this case.

2          Mr. Guidry, before the Court issues a sentence in

3  this case, you have a right to make a statement or present

4  any information that you wish to mitigate the sentence.

5          Do you wish to make a statement at this time?

6          DEFENDANT GUIDRY:  Yes, Your Honor.

7          THE COURT:  Please proceed.

8          DEFENDANT GUIDRY:  Yes, Your Honor.  I have

9  nothing but regret and remorse for the decisions I made.

10  I've hurt those people that I care about the most in doing

11  what I've done.  And my family that's behind me in the -- my

12  ex-wife and my stepdaughter, I hurt them and I'm sorry for

13  having hurt them.  I hate myself every day for this.  I cry

14  every day.  I cry because I feel bad for what I've done.  I

15  just want one more chance and I pray that you have mercy on

16  me.  I have an eight-year-old daughter that I pray that I

17  get to see her grow up.

18          I'm sorry for crying, Your Honor, but this is me

19  every day.  Every day I cry.  I'm so sorry, so sorry.  I'm

20  sorry.  I'm so sorry for what I've done.

21          MR. BUCKLEY:  Thank you, Your Honor.

22          THE COURT:  Before the Court issues a sentence,

23  I'd like to ask both the Prosecution and the Defense for

24  a -- if you have a sentencing recommendation?

25          Ms. Zack?

1        MS. ZACK:  Your Honor, I would ask that you

2  sentence within the Guidelines as calculated and it's my

3  understanding, based on the way the Guidelines are

4  calculated, that the Defendant should get as to Count One,

5  360 months; as to Count Two, 360 months; and as to Count

6  Three, 60 months all to run consecutively for a total of

7  780 months.

8        THE COURT:  And --

9        MR. BUCKLEY:  It's my argument to the Court,

10 Your Honor, that a sentence in excess of 200 months combined

11 would be greater than necessary under the particular facts

12 and the mitigating facts of this case to satisfy the

13 directives of 18, U.S.C., 3553(a).

14        Thank you, Your Honor.

15        THE COURT:  Okay.  Counsel, I'm just going to take

16 just a brief recess no more than about three minutes and

17 I'll be right back with my sentence.

18        MS. ZACK:  Thank you, Your Honor.

19     (Recess taken from 12:09 p.m. to 12:27 p.m.)

20        THE COURT:  If the parties can please approach?

21     (Pause in the proceedings.)

22        THE COURT:  At this time, the Court is ready to

23 announce a sentence in this case.

24        Mr. Guidry, I've reviewed this file very

25 carefully, I've looked at all the letters that have been

1 submitted on your behalf and I have thought through what was

2 said in them and your situation very, very carefully. And

3 with all due respect, sir, what you did was absolutely

4 horrific. You -- and it pains me to say this, but you're

5 the worst kind of predator. You're someone who solicited

6 the trust, the response, the admiration of the victims, and

7 then you turned around and used that respect and trust for

8 your own self-gratification. You manipulated them to do

9 what you wanted them to do for no other reason as because it

10 made you happy.

11 And these children trusted you. They placed

12 everything that they had in your hands and you completely

13 abused that trust. And what bothers me is that if you're

14 willing to do this to people, to young kids that you know

15 and supposedly love and as an adult and as a parent care

16 for, I shudder to think what you could do to people and

17 victims that you don't know.

18 Now, I have read the letters from your family

19 members who love -- and it's obvious that they love you

20 very, very much, but it's also obvious from reading these

21 letters that you've manipulated them just like you

22 manipulated these young victims. You have manipulated them

23 into thinking that you are somebody that you clearly are

24 not.

25 And I am very sympathetic to your situation, I'm

sympathetic to your family's feelings and I have an
obligation to you and your family members as fellow citizens
to be fair and just, but I also have an obligation to the
victims who can't speak for themselves, the victims who
don't have people here supporting them, who don't have
letters that I can read about how this will affect their
lives or what your conduct could do to them or has done to
them.  And it's that obligation, sir, that I have to those
victims that requires the sentence that I'm going to impose
in this case this morning.

Pursuant to the <u>Sentencing Reform Act of 1984</u>,
it's the judgment of this Court that the Defendant,
Benjamin Douglas Guidry, is hereby committed to the custody
of the Bureau of Prisons to be imprisoned for a term of
270 months as to each Counts One-S and Two-S, and 60 months
as to Count Three-S all to be served consecutively.

Upon release from imprisonment, the Defendant
shall be placed on supervised release for a term of life.
The term of life as to each of Counts One-S and Two-S and
three years as to Count Three-S all to run concurrently.

Within 72 hours from the release from Bureau of
Prisons, the Defendant shall report in person to the
probation office in which the District to which the
Defendant is released.

While on supervised release, the Defendant shall

not commit another federal, state or local crime, shall

comply with the standard conditions that have been adopted

by this Court under General Order Number 2017-1, abide by

any mandatory conditions required by law and shall comply

with the following additional conditions:

You must cooperate in the collection of DNA as

directed by the Probation Officer;

You must not own, possess or have access to a

firearm, ammunition, destructive device or other dangerous

weapon, i.e., anything that was designed or modified for the

specific purpose of causing bodily injury or death to

another person such as nunchucks or Tasers;

You shall report the address where you will reside

and any subsequent change of address to the Probation

Officer responsible for supervision and you shall register

with the Sex Offender Registration Agency in any state where

you reside, are employed, carry on a vacation, or is a

student as directed by the Probation Officer;

The Probation Officer will provide the State

officials with any and all information required by the State

Sex Offender Registration Agency and may direct you to

report to that agency personally for additional processing

such as photographing and fingerprinting;

You shall participate in a mental health treatment

program and/or a sex offender treatment program provided by

a registered sex offender treatment provider as provided

by the United States Probation Officer which may include,

but not limited to, group and/or individual counseling

sessions, able screen, polygraph testing and/or a psycho

psychological -- or physiological testing to assist in the

treatment and case monitoring administered by the sex

offender contractor or their designee;

Further, you shall participate as instructed and

shall abide by all policies and procedures of the sex

offender program until such time as you're released from the

program as approved by the United States Probation Officer;

You will incur costs associated with such sex

offender treatment program and testing based on your ability

to pay as determined by the United States Probation Officer;

You shall waive your right of confidentiality and

any records for mental health treatment imposed as a

consequence of this judgment to allow the supervising United

States Probation Officer to review your course of treatment

and progress with the treatment provider;

The Court authorizes the release of the

Presentence Report and available mental health evaluations

to the mental health provider as approved by the Probation

Officer;

You shall not date or cohabitate with anyone who

has children under the age of 18 unless approved in advance

1 in writing by the United States Probation Officer;

2       You shall not have any contact with the victims or

3 victims' families including letters, communication devices,

4 audio/visual devices, visits or any contact through a third

5 party without prior written consent of the United States

6 Probation Officer;

7        You must participate in a mental health treatment

8 program and follow the rules and regulations of that

9 program;

10       The Probation Officer, in consultation with the

11 treatment provider, will supervise your participation in the

12 program including the provider, location, modality, duration

13 and intensive.  You must pay the cost of the program if

14 you're financially able;

15       You must take all mental health medications that

16 are prescribed to you by a treating physician and you must

17 pay the cost of that medication if you're able.

18       Pursuant to 18, U.S.C., Section 3664(d)(5), if a

19 victim's losses are not ascertainable by the date that is

20 10 days prior to sentencing, the attorney for the Government

21 or the Probation Officer shall so inform the Court and the

22 Court shall set a date for a final determination of the

23 victim's losses not to exceed 90 days after sentencing.

24 Such order may be granted only upon a showing of good cause

25 for the failure to include such losses in the initial claim

1  for restitutionary relief.

2       It is further ordered that the Defendant pay

3  restitution in the amount of $201,454.  That's $158,454 for

4  the fraudulent refunds and $34,000 for the employment tax

5  liabilities for 2013, 2014 and 2015 of the Pool Scrubbers,

6  LLC, and of Robert Matthew Clark to the Internal Revenue

7  Service payable to the following address: IRS-RACS,

8  Attention Mail Stop 6261 Restitution, 333 West Pershing

9  Avenue, Kansas City, Missouri 64108; and $8,000 to

10 Robert Matthew Clark paying to the following address:

11 301 Lancaster Lane, League City, Texas 77573.

12      It is further ordered that the Defendant shall pay

13 the United States a special assessment of $300.

14      The Court finds that Mr. Guidry does not have the

15 ability to pay a fine and the Court will waive a fine in

16 this case.

17      Having assessed the Defendant's ability to pay the

18 payment of the total criminal monetary penalties shall be

19 due as follows:

20      The Defendant shall make a lump sum payment of

21 $5,300 due immediately;

22      The balance due in 50 percent of any wages earned

23 while in prison in accordance with the Bureau of Prisons

24 Inmate Financial Responsibility Program;

25      Any balance remaining after the release from

1 imprisonment shall be due in monthly installments of $100 to

2 commence 60 days after the release from imprisonment to a

3 term of supervision;

4        Payment is to be made through the United States

5 District Clerk, Southern District of Texas.

6        MS. ZACK:  Your Honor, there appears to be -- I

7 believe that you misstated the 35 -- it should have been

8 35,000 for employment tax liabilities, not 34.

9        MR. ESCHER:  For Pool Scrubbers and --

10        THE COURT:  Oh, I'm sorry, I thought it said 35, I

11 apologize.

12        MS. ZACK:  Right.  I just wanted to make --

13        THE COURT:  Thirty-five thousand.

14        MS. ZACK:  -- clear on the Record.  I believe the

15 final calculation though of the $201,454 is correct.

16        Is that right?

17        MR. ESCHER:  Yeah.

18        MS. ZACK:  Okay.  Please double-check.

19        THE COURT:  And includes $158,454 of fraudulent

20 refunds and $34,000 --

21        MS. ZACK:  Thirty -- yeah.

22        THE COURT:  Sorry, $35,000 for employment tax

23 liabilities for 2013, 2014 and 2015 by the Pool Scrubbers,

24 LLC, and of Robert Matthew Clark.

25        MR. ESCHER:  Thank you.

1          MS. ZACK:  Thank you, Your Honor.

2          THE COURT:  Is there anything further from the

3    Government in this matter?

4          MS. ZACK:  No, Your Honor.

5          THE COURT:  Mr. Buckley, is there anything further

6    on behalf of your client?

7          MR. BUCKLEY:  Thank you, Your Honor.  We would

8    respectfully request that Mr. Guidry -- or if the Court

9    would recommend to the Bureau of Prisons that he be

10   designated an FCI Bastrop.

11         THE COURT:  I will do so.

12         MR. BUCKLEY:  Thank you.

13         THE COURT:  Of course, Mr. Guidry, it's not -- the

14   Bureau of Prisons does not have to follow my recommendation,

15   but I will recommend that you be in Bastrop so that you'll

16   at least be near to your family.

17         DEFENDANT GUIDRY:  Thank you, Your Honor.

18         THE COURT:  You have the right to appeal my

19   sentence.

20         I'm providing you with a written notice of your

21   right to appeal and if you could sign that just

22   acknowledging that you're aware of the right to appeal in

23   this case.

24      (Defendant and counsel sign notice.)

25         THE COURT:  Okay.  The Record will reflect that

1  the Notice of Appeal has been signed.

2         Anything further from the parties?

3         MS. ZACK:  Not in this matter, Your Honor, no.

4         MR. BUCKLEY:  Nothing from us, Your Honor.

5         THE COURT:  Mr. Guidry, good luck to you, sir.

6         DEFENDANT GUIDRY:  Thank you.

7         THE COURT:  And you may be excused.

8         PROBATION OFFICER JONES:  Your Honor, can I ask

9  you a question?

10        THE COURT:  Sure.  Okay.  There's nobody here on

11 that side.

12        MS. ZACK:  Oh, I'll go with you.

13        PROBATION OFFICER JONES:  Yeah.  Is the total

14 sentence 600 months; is that the total sentence?

15        THE COURT:  270, 270 and 60, yes, 600.

16        PROBATION OFFICER JONES:  Yes.  And is that a

17 variance based on 18 U.S.C. 3553(a)?

18        THE COURT:  Yes, it is.

19        PROBATION OFFICER JONES:  Okay.  Thank you,

20 Your Honor.

21     (These proceedings concluded at 12:40 p.m.)

22                    *  *  *  *  *

23      *I certify that the foregoing is a correct*

24 *transcript to the best of my ability produced from the*

25 *electronic sound recording of the proceedings in the above-*

entitled matter.

/S/ MARY D. HENRY

CERTIFIED BY THE AMERICAN ASSOCIATION OF

ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**D-337

JUDICIAL TRANSCRIBERS OF TEXAS, LLC

JTT TRANSCRIPT #57121

DATE: AUGUST 13, 2017